500 A.2d 1106
**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Donald Anthony GARRITY, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 19, 1985.

Decided Nov. 14, 1985.

48

John J. Driscoll, Dist. Atty., Donna J. McClelland, Asst. Dist. Atty., Judith Karns Ciszek, Greensburg, for appellant.

Edward Bilik, First Nat. Bank, Greensburg, for appellee.

Before NIX, C.J., and LARSEN, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

The Commonwealth appeals by allowance a Superior Court order reversing a Westmoreland County Court of Common Pleas order denying relief under the Post-Conviction Hearing Act. (PCHA).[1] Superior Court vacated petitioner's third-degree murder conviction and granted him a new trial. It held that appellee lost his right to effective assistance of counsel when his trial attorney failed to adequately advise him of his right to testify in his own behalf. We hold that trial counsel's strategy was reasonably related to appellee's interests, and thus constitutionally effective. Therefore, we reverse.

In the early morning hours of March 26, 1979 Dale Clawson and his friend, Ronnie Rose, left Seven Springs Ski resort. They left in Clawson's pick-up truck; Clawson was driving. As the pair travelled on County Line Road, on the border of Fayette and Westmoreland Counties, Rose noticed

1. 42 Pa.C.S. § 9541–9551.

two people standing at the right edge of the road, near John Coccioletti's cabin. There is no indication in the record that Rose could identify these individuals. An instant after passing them, Rose heard a loud "bang". Clawson slumped over and lost control of the truck. It left the highway, and crashed into a tree. After the truck stopped, Rose saw a hole in the back of Clawson's head. Pathological investigation showed that a bullet of unknown caliber had passed through Clawson's head and caused his death. Evidence showed that the bullet was fired from the right and rear of Clawson at a slightly lower elevation, roughly at the location where the two individuals · were standing. Two spent .45 caliber shells were found at the berm of the road; ballistic evidence showed that they came from a gun registered to Coccioletti.

Also on March 26, 1979, appellee and his friend, John Coccioletti, and Roger Eckels, an off-duty Mt. Pleasant Borough policeman, were at the bar at the Seven Springs Ski resort. Eckels noticed that Coccioletti and appellee were drunk. He drove them to Coccioletti's cabin and took the keys to their vehicle. Coccioletti's cabin is located on County Line Road in the vicinity where Clawson was shot. Shortly after returning to Seven Springs Eckels got a call from appellee. Appellee asked Eckels to come back to the cabin because "John's going crazy. He took the .44 and went outside." [2] Before Eckels arrived, appellee and Coccioletti left the cabin. They went to breakfast with a friend named Kurt Pankopft. Driving to the restaurant in Pankopft's truck, they passed Clawson's truck. Coccioletti remarked that he felt responsible because he threw an M–80 [3] at the truck. N.T. at 258. [4] After arriving at the cabin, Eckels realized that appellee and Coccioletti were gone, and noticed Clawson's crashed truck. Eckels investigated and found that Clawson was dead. Eckels called the

**2.** This statement was excluded at trial upon Coccioletti's counsel's objection. N.T. at 337–38. It is, however, exculpatory as to appellee.

**3.** An M–80 is a powerful firecracker.

**4.** This inculpatory statement was admitted over trial counsel's objection.

restaurant and spoke with appellee. He asked appellee if they were involved in any incident; appellee denied involvement in any incident. N.T. at 328–30.[5] Eckels instructed them to return to the cabin immediately. During the return trip appellee and Coccioletti discussed what should be done with the guns. On the way back they stopped twice, once to empty ammunition and once to hide the two pistols. N.T. at 263–73.[6] Later, appellee asked Pankopft to retrieve the guns; they were subsequently seized in a search of Coccioletti's cabin. Upon their return, Eckels asked appellee and Coccioletti what they were doing. Coccioletti said that they were shooting across the road, but the only way anyone could have been hit was by a ricochet. N.T. at 333.[7]

Subsequently, appellee and Coccioletti were arrested and charged with criminal homicide. Their cases were consolidated, and trial began on June 25, 1979. On July 2, 1979, the jury found both men guilty of third-degree murder. After the court denied post-trial motions, appellee was sentenced to 3–10 years. This Court affirmed appellee's conviction.[8]

Through a new attorney, Edward J. Bilik,[9] appellee instituted PCHA proceedings on January 2, 1982. Appellee claimed that trial counsel was ineffective for failing to challenge the "rubber stamp" signature on the District Attorney's information, failing to demand severance of appellee's trial from Coccioletti's and failing to advise appellee of his right to testify at trial.

5. This statement was admitted over trial counsel's objection.

6. This inculpatory testimony was admitted over trial counsel's objections.

7. This inculpatory statement was admitted over trial counsel's objection.

8. Appellee Garrity's direct appeal was consolidated and argued with that of co-defendant Coccioletti. It is reported and indexed under the name of *Commonwealth v. Coccioletti,* 493 Pa. 103, 425 A.2d 387 (1981).

9. Appellee's counsel from pre-trial proceedings to direct appeal to the Supreme Court was Leonard Martino of Pittsburgh.

Following an evidentiary hearing in Westmoreland County Court of Common Pleas on February 22, 1983, relief was denied on all three counts. The PCHA Court held that trial counsel's failure to demand a severance and to advise the appellee to testify had a basis reasonably designed to further appellee's interest. Therefore, it held appellee's representation was constitutionally effective.[10] Upon appeal a divided Superior Court panel granted relief. Superior Court affirmed Common Pleas on the "rubber stamp" and severance issues, but found that trial counsel was ineffective because his strategy of resting at the conclusion of the prosecution's case was without reasonable basis. *Commonwealth v. Garrity*, 331 Pa.Superior 475, 480 A.2d 1133 (1984). The majority held that since the inculpatory statements that counsel hoped to exclude were admitted, his strategy was no longer valid. At this point, Superior Court reasoned, counsel and client had nothing to lose by putting appellee on the stand. Through appellee the exculpatory statements "John's going crazy. He took the .44 and went outside" could be introduced; and, since appellee had no prior convictions and a good reputation, he could not be easily damaged. Thus, it found counsel's fear that appellee would not perform well and his desire to keep the record clean for appeal meritless. We granted the Commonwealth's petition for allowance of appeal.

■ It is well-established in Pennsylvania that if the course chosen by trial counsel had some reasonable basis designed to effectuate the client's interest then trial counsel's representation was constitutionally effective. *Commonwealth ex. rel Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967). A court may not substitute its judgment for trial counsel's. The reasonableness of the choice may not be judged with the benefit of hindsight, but only from trial counsel's perspective. *Id.* Appellee's inef-

---

**10.** The court also dismissed the "rubber stamp" issue, holding that the rubber-stamped signature did not make the information vc id *ab initio.* This decision was correct. *Commonwealth v. Emanuel,* 501 Pa. 581, 462 A.2d 653 (1983). Appellee does not argue the "rubber stamp" issue here.

fective assistance of counsel claims must be evaluated against this standard.

Appellee first asserts that trial counsel was ineffective for failing to sever [11] appellee's trial from Coccioletti's. A review of the record, however, reveals that trial counsel had a reasonable basis for pursuing a joint trial.

The record shows that from the beginning of his representation of appellee, trial counsel believed that the Commonwealth had a weak case, which was based entirely on circumstantial evidence. Trial counsel believed that if certain statements of appellee and Coccioletti could be excluded from evidence and the defendants did not testify themselves the Commonwealth could not prove its case. To exclude the inculpatory statements made by the defendants [12] from evidence, trial counsel relied upon *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In *Bruton* the United States Supreme Court held that the confessions of a co-defendant are inadmissible in a joint trial if the co-defendant refuses to testify because this would violate the defendant's constitutional right to confront his accusers. *Id.* at 126–27, 88 S.Ct. 1622–23. The court noted that such confessions are inherently prejudicial and an instruction to the jury that the confession is only evidence against the declarant is inadequate. *Id.* The confession in *Bruton* was hearsay to the non-declarant defendant. *Bruton* is expressly inapplicable, however, to non-hearsay or hearsay within a recognized exception. *Id.* at 128 n. 3, 88 S.Ct. 1623–24 n. 3.

■ Trial counsel reasoned that if appellee and Coccioletti were tried jointly all inculpatory statements could be excluded based on the *Bruton* holding.[13] He also reasoned

---

**11.** Appellee suggests that severance or "redaction" would have been appropriate. "Redaction", the deletion of any references to co-defendant in the statements, would not be appropriate here. These statements cannot be so sanitized. Therefore only severance will be discussed.

**12.** *See supra* notes 4–7 and accompanying text.

**13.** Trial counsel believed that the co-conspirator exception to the hearsay rule was inapplicable because appellee and Coccioletti were

that since all statements were made after the object of the conspiracy, the shooting, was complete the co-conspirator hearsay exception would be inapplicable. The record shows that appellee, Coccioletti and Coccioletti's counsel all agreed with this strategy. Appellee does not argue that this is an inaccurate or incorrect statement of the law in 1979, the time the trial commenced. Trial counsel was confident that all inculpatory statements of the defendants would be excluded and the Commonwealth would be unable to prove its case, perhaps it would not even survive a demurrer. *Compare Commonwealth v. Porter*, 449 Pa. 153, 295 A.2d 311 (1972) (statements of co-conspirators made after initial assault on the victim but before final assault were held to be within the co-conspirator exception; the conspiracy was not complete.) *with Commonwealth v. Ellsworth*, 409 Pa. 505, 187 A.2d 640 (1963) (statements of co-conspirators made after robbery, which resulted in murder and division of the stolen money were not within the co-conspirator exception because the conspiracy ceased upon division of the booty.)

 This strategy, which was reasonably related to acquitting appellee, could not be pursued in separate trials. The strategy had a reasonable basis, and the means used to effectuate it were acceptable. Therefore, trial counsel's failure to sever the trials does not constitute constitutionally ineffective assistance of counsel.

At trial, however, counsel's plans went awry. The trial judge admitted inculpatory [14] statements made by both appellee and Coccioletti over his objection. Specifically, these statements were Coccioletti's statement that he threw a firecracker at Clawson's truck, Coccioletti's statement to Eckels that appellee and he were shooting across the road, the discussion between Coccioletti and appellee in Pankopft's truck about how to dispose of the guns, and appellee's denial to Eckels that they were involved in an incident.

not charged with conspiracy. Counsel is incorrect on this point. The co-conspirator exception applies to co-participants not charged with conspiracy. *Commonwealth v. Stultzfus*, 462 Pa. 43, 337 A.2d 873 (1975).

**14.** *See supra* notes 4–7 and accompanying text.

In addition, an exculpatory [15] statement, made by appellee was excluded from evidence upon objection of Coccioletti's counsel. This statement was appellee's remark to Eckels that "John's going crazy. He took the .44 and went outside."

Trial counsel did not, however, alter his strategy and rested without presenting any evidence. Appellee was found guilty of third-degree murder. Appellee appealed. This Court held that the co-conspirator exception to the hearsay rule applied to statements between co-participants made after the completion of the act but before arrest. *Commonwealth v. Coccioletti, supra*, 493 Pa. at 113, 425 A.2d at 392. This holding brought these statements within an exception to the hearsay rule and, thus, rendered the *Bruton* doctrine inapplicable. Appellee's conviction was thus affirmed.

Appellee alleges, and Superior Court held, that trial counsel's failure to change his strategy and present evidence after the trial judge admitted the inculpatory statements and excluded the exculpatory statement was without reasonable basis to further appellee's interest. We disagree. Trial counsel's understanding of the law at the time of trial was reasonable. He was justified in believing that the trial judge had erred, and the result could be rectified on appeal. The law expects counsel to be diligent and competent in the law; it does not expect him to be clairvoyant or psychic. Trial counsel could not predict that the law would be changed by our Court and his failure to so predict was not unreasonable. *Commonwealth v. Triplett*, 476 Pa. 83, 381 A.2d 877 (1977).

Contrary to Superior Court's holding and appellee's assertion there were considerations that mitigated against presenting evidence on appellee's behalf. By testifying and undergoing cross-examination appellee could provide, from his own mouth, sufficient evidence to prove the Commonwealth's case, or to take it to a jury exclusive of the disputed evidence. In addition, the record shows that trial

**15.** *See supra* note 3 and accompanying text.

counsel felt that appellee was young, naive and unsophisticated and consequently might not fare well under competent cross-examination. Believing that the Commonwealth's case, otherwise based on circumstantial evidence could not survive a demurrer or directed verdict without the statements he had objected to, trial counsel wanted to keep a clean record for appeal. Together these reasons present a reasonable basis designed to further appellee's interest for not calling him to testify.

Appellee also claims that trial counsel never advised him of his right to testify. However, after hearing testimony from trial counsel and appellee the PCHA court found that trial counsel did advise appellee of that right. This finding, based on a resolution of conflicting evidence is binding on us. Since appellee was aware of his right as well as trial counsel's strategy, he could have exercised his own informed judgment and asserted his right to testify, by asking trial counsel to depart from the original strategy. Perhaps, optimal representation by trial counsel would have taken appellee aside at the close of the Commonwealth's case, apprised him of the situation, and reminded him again of his right to testify. Trial counsel did not do so. However, optimal representation is not required either by the constitution or common sense. What is required is reasonably effective representation. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Commonwealth ex rel Washington v. Maroney, supra.* Under that standard, appellee was not denied his Sixth Amendment right to effective counsel. Since the course pursued by trial counsel had a reasonable basis designed to effectuate appellee's interests, trial counsel's representation of appellee, though unsuccessful, was not constitutionally ineffective.

Accordingly, we reverse Superior court's order and reinstate the order of Westmoreland County Court of Common Pleas.

FLAHERTY, J., did not participate in the consideration or the decision of this case.