532 A.2d 796

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Vincent JOHNSON, Appellee.**

Supreme Court of Pennsylvania.

Submitted April 10, 1987.

Decided Oct. 15, 1987.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Philadelphia, for appellant.

Daniel M. Preminger, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

We are asked by the Commonwealth to review the issues of whether the seven year lapse before pursuing PCHA [1] relief constituted a waiver under the Act, and whether trial counsel was ineffective for not objecting to a confession on the allegation that it was induced because of the delay between arrest and preliminary arraignment and for not objecting to the closing statement of the prosecution.

Following the beating of the victim, the factual history of this case shows that the police requested Appellee's father to bring in his son as a suspect, then seventeen years old, for questioning. Appellee appeared with his father on November 5, 1971, at 5:35 p.m., and surrendered to the police who administered *Miranda* warnings in the presence of the father. Appellee then was interviewed until 6:45 p.m. with his father present, but persistently denied that he had committed the crime. Between 6:45 and 9:00 p.m. he

1. Act of January 25, 1966, P.L. (1965) 1580, 19 P.S. § 1180-5, repealed by Section 3 of the Act of May 13, 1982, P.L. 417. Now codified at 42 Pa.C.S. § 9545.

underwent additional questioning by the authorities. At 9:00 p.m., however, Appellee made an oral admission to the police which was completed at 9:50 p.m. The oral admission was repeated to his father, who had re-entered the interrogation room and had questioned his son about the killing, although the defendant later denied this on the stand. At 10:25 p.m., detectives informed him that the victim had died earlier at 9:35 p.m. Questioning resumed the next morning, November 6, at 8:00 a.m. when the Appellee was asked, among other matters, to identify a rock which had been used to kill the victim. That interview ended at 12:15 p.m. Appellee thereafter was left alone until 4:20 p.m. At that time, he was taken to the interrogation room where he began to give a formal written inculpatory statement. This confession was completed at 8:00 p.m. and signed by the Appellee. The father was not present. The Appellee then was arraigned before a magistrate sometime after 8:00 p.m. of that second day.

At the suppression hearing on August 27, 1972, the Appellee unsuccessfully sought to suppress the oral statement. At the jury trial itself, held on March 21, 1973, a police officer was permitted to testify over a hearsay objection that he (the officer) had asked Appellee's father whether the *Miranda* warnings had been understood fully, and the father had replied affirmatively. Moreover, another officer was allowed to testify that he had overheard the conversation between the Appellee and his father in which the Appellee had admitted the crime. Finally, both his oral and written confessions were introduced by the Commonwealth, as well as the lengthy testimony of an eyewitness to the beating death.

Appellee was convicted of murder of the first degree and aggravated robbery. On August 8, 1973, he was sentenced to life imprisonment for murder and ten to twenty years (concurrent) for aggravated robbery.

On direct appeal to this court, his trial counsel raised *inter alia* the voluntariness of his written confession and the admissibility of that written statement which he alleged

was induced by the delay between his arrest and preliminary arraignment. As to the first issue, we determined that the confession was voluntary because, "the evidence tended to show the absence of a coercive atmosphere surrounding appellant's statement." We also concluded that the testimony of the police officers was admissible, but that his contention that his formal statement was the product of an unnecessary delay had been waived by failure to preserve below. No objection to the oral confession was raised at trial or on direct appeal. *Commonwealth v. Johnson,* 457 Pa. 554, 557–559, 327 A.2d 632, 633–635 (1974) (Jones, C.J. and Eagen, J. concurred in the result; Manderino, J. did not participate). Our holding in that appeal specifically concluded that the formal statement made by the Appellee to the police was "substantially identical to the earlier oral statement."

Seven years later, on January 5, 1981, Appellee filed his first collateral appeal under the P.C.H.A. Represented by different counsel, Appellee alleged that his trial counsel was ineffective for failing to argue that the two confessions made in jail were the products of an unnecessary delay between arrest and arraignment, and for failing to object to the prosecution's closing remarks to the jury. In addition to denying the allegations of ineffective assistance, the Commonwealth's answer argued again that relief was barred by Appellee's unexplained delay constituting waiver.

The P.C.H.A. court denied the petition. The Superior Court, however, in a majority memorandum opinion with one dissent, 344 Pa.Super. 623, 495 A.2d 612, agreed with Appellee and vacated the sentence and ordered a new suppression hearing and trial with instructions that "the statements were the product of unnecessary delay." In the present appeal by the Commonwealth, the same three issues again are put forth for our review.

▮▮ Initially, the Commonwealth contends that these claims for relief have been waived because of the unexplained delay in seeking PCHA relief. Mere delay, standing alone, may not be a sufficient reason to reject a petition

summarily.[2] The orthodox method of avoiding waiver has been to raise the claim of ineffectiveness of trial counsel at the first available opportunity. Our familiar cases have defined the first available opportunity as the moment when the defendant is represented by different counsel either on direct appeal or on collateral review. *Commonwealth v. Fox,* 476 Pa. 475, 383 A.2d 199 (1978); *Commonwealth v. Seachrist,* 478 Pa. 621, 387 A.2d 661 (1978); *Commonwealth v. Hubbard,* 472 Pa. 259, 276 n. 6, 372 A.2d 687 (1977); *Commonwealth v. Dancer,* 460 Pa. 95, 100, 331 A.2d 435, 438 (1975). As applied to the facts of this case at hand, waiver will not lie because while Appellee's trial counsel represented him on direct appeal, this first P.C.H.A. petition alleging ineffectiveness is being conducted by second counsel. *Commonwealth v. Triplett,* 476 Pa. 83, 381 A.2d 877 (1977). Nor do other relevant factual circumstances exist which would merit the imposition of waiver because of any detriment to the Commonwealth. This case is properly before the Courts.

■ In order to comply faithfully with our case law on the subject of ineffectiveness, however, it is necessary to demonstrate at the threshold that the challenge to the conduct of trial counsel is of arguable merit and that such dereliction prejudiced the defendant. If it can be garnered from the record that the stewardship was reasonable, on the other hand, post conviction relief will be denied. *Commonwealth v. Parker,* 503 Pa. 336, 469 A.2d 582 (1983). Reasonableness and arguable merit are legal concepts which require that we examine trial counsel's strategy in the light of available alternatives. *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967). Without a showing of such unreasonable dereliction, the claim should be dismissed. *Commonwealth v. Davis,* 433 Pa. 267, 249 A.2d 766 (1969). Where it is equally clear that the allegations are baseless or meritless, there is no need for a court to go further in search of relief for the Petition-

---

**2.** In *Commonwealth v. Weddington,* 514 Pa. 46, 522 A.2d 1050 (1987), we recently held that mere delay does not justify dismissal of a post conviction petition.

er. *Commonwealth v. Clemmons,* 505 Pa. 356, 479 A.2d 955 (1984); *Commonwealth v. Stoyko,* 504 Pa. 455, 475 A.2d 714 (1984).

A Petitioner must prove additionally that he was prejudiced by the ineffectiveness. The prejudice standard has been employed most recently in *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987). In *Pierce,* we determined that before relief may be granted, courts must find both an unprofessional performance which implicated the truth-finding function of the trial, as well as prejudice resulting therefrom to the defendant. The standard of review is that there must be a reasonable probability that, but for counsel's unprofessional errors, the results of the trial would have been different.

■ Under the present appeal, the Appellee advances two allegations against his trial counsel. First, he argues that his trial counsel failed to object at suppression and trial that both his oral and written confessions were compelled by an unnecessary delay between his arrest on November 5, 1971, and preliminary arraignment on November 6, 1971.

The applicable law at the time of his trial in March, 1973, was *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972). Appellee's suppression hearing and trial took place four months and eleven months, respectively, after our decision in *Futch.* The purpose of *Futch* was to prevent a deliberate postponement of the preliminary arraignment in order to induce a confession.[3] *Commonwealth v. McGeachy,* 487 Pa. 25, 407 A.2d 1300 (1979). *Futch* established a three-part test which offered relief in the form of the suppression of evidence if: 1) the delay was unnecessary; 2) prejudicial evidence was obtained during the delay; and 3) the prejudicial evidence was reasonably related to the

---

3. *Futch* was based on Pa.R.Crim.P. 118 (now Rule 130) which provides:

　　1. When a defendant has been arrested without a warrant, he shall be taken without unnecessary delay before the proper issuing authority where a complaint shall be filed against him.

　　(a) if the complaint charges a court case, the defendant shall be given an immediate preliminary arraignment.

delay. *See also, Commonwealth v. Williams,* 455 Pa. 569, 319 A.2d 419, 420 (1974).

Subsequent interpretations of *Futch* determined that there was no specific period of time which could be utilized as a measurement of "unnecessary delay." *Commonwealth v. Bey,* 462 Pa. 533, 341 A.2d 907 (1975); *Commonwealth v. Barilak,* 460 Pa. 449, 333 A.2d 859 (1975); *Commonwealth v. Johnson,* 458 Pa. 425, 327 A.2d 618 (1974); *Williams, supra;* and *McGeachy, supra.* Indeed, the central focus of *Futch* was on a case-by-case evaluation to decide whether the delay was unnecessary. Justice Eagen's concurring opinion in *Commonwealth v. Tingle,* 451 Pa. 241, 249, 301 A.2d 701, 705 (1973), underscored the rule that the *"operative question is what occurred within the delay."* (Italics in the original.) *Tingle's* majority opinion held further that *Futch* did not establish a *per se* rule that "all evidence obtained during an unnecessary delay be excluded. It is only upon the defendant's showing of prejudice from the delay, i.e., a nexus between the delay and the challenged evidence that he is entitled to relief." 302 A.2d at 703. The evidence obtained, therefore, must be "reasonably related" in the sense that the defendant would not have given the evidence had it not been for the delay. *Commonwealth v. Cherry,* 457 Pa. 201, 321 A.2d 611 (1974), which construed Rule 118 prior to *Futch.*

In this case, the Appellee gave an oral confession within four hours of his arrest. During that time, he was being interrogated properly by the police and was being processed as well. The record shows that both he and his father understood the *Miranda* warnings and, as to the oral confession, certainly there is no evidence of coercion through the passage of time or by any other means. Although he was not arraigned until at least twenty-eight hours later (after 8 p.m. on November 6, 1971, following his written confession), there is no reason under the facts to suspect that the oral confession was not the product of his own free will. There existed no nexus between the delay and the challenged evidence.

In this respect, it is the circumstances of the questioning rather than the mere passage of time, which establishes the non-mechanical rule of the case. This bright line was articulated definitively by Mr. Justice Nix (now Chief Justice) in *Commonwealth v. Jenkins*, 500 Pa. 144, 149–150, 454 A.2d 1004, 1006–1007 (1982):

> The *Futch* rule was deliberately made flexible to provide the opportunity for a court to exclude only that evidence which was clearly tainted by the coercive atmosphere of the custodial interrogation. While this flexibility was salutary in providing our trial courts the leeway to separate evidence tainted by that coercive influence from that which resulted from volunteered self compelled utterances, (citations omitted) experience proved it to be difficult for law enforcement officials to administer.

> \* \* \* \*

> At no time did we wish to cut off freely volunteered confessions of guilt, nor did we wish to impede legitimate law enforcement efforts. The primary purpose sought to be obtained was to discourage the obtaining of incriminatory information through coercive means.

Under this analysis, therefore, the oral confession did not violate *Futch* in any way.

The written confession, which was signed twenty-four hours later, but before arraignment, of course, has already been judged by this Court to have been uncoerced and voluntary. *Johnson, supra.* In addition, under *Commonwealth v. Davis*, 460 Pa. 644, 334 A.2d 275 (1975), we held directly on point that since "appellant's oral statement was the same as his written confession, any delay in arraignment after the oral confession would not be prejudicial to appellant, since he had already admitted his participation in the homicides."

Both confessions, therefore, were obtained properly without any impairment of *Futch*. Because of this inexorable conclusion, trial counsel cannot be said to have been ineffective under *Hubbard's* or *Maroney's* standards.

■ Another allegation of ineffectiveness contained in this appeal accuses trial counsel of failing to object to prosecutor's specific closing words to the jury:

His mother and his family who have sat here in the courtroom during the entire trial—you saw his mother testify—they will never see young Kenny again. Young Kenny will never walk the streets of Philadelphia, will never again run or play basketball or do any of the other things that young men do. He will never grow up and marry and he will never light up his mother's eyes again when he smiles, and the reason is because this defendant bashed him in the head with a rock twice and took his pants and his ring, and that is why Kenneth Wakefield will never again walk the streets of this City, why this young 16 year old man had his life snuffed out in the prime of his young manhood, because this defendant bashed him over the head with a rock. I submit to you, ladies and gentlemen, that the only way that you can bring back a verdict other than guilty of first degree murder is if Kenneth Wakefield walks through that door. Shall we wait?

One year after Appellee's trial, we held in *Commonwealth v. Lipscomb*, 455 Pa. 525, 317 A.2d 205 (1974), that similar language was improper and constituted grounds for mistrial:

"And I think (the victim) would say, 'The only way you couldn't find this defendant guilty of murder of the first degree is for me to come alive again before your very eyes and walk out of that door to my home.'"

Several years later, in *Commonwealth v. Evans*, 479 Pa. 100, 387 A.2d 854 (1978), we also decided that identical language was grounds for reversal:

I say to you, ladies and gentlemen, that the only way you can fail to bring back a verdict of guilty of murder in the first degree is if Arthur Bock walks through those doors. Shall we wait?

*Also see, Commonwealth v. Cronin*, 464 Pa. 138, 346 A.2d 59 (1975), where the prosecutor told the jury that *"the only*

*way you cannot find this defendant guilty of murder of the first degree is for Louis Cooper to walk through that door,"* and we reversed on the grounds that the statement was inflammatory. An identical result was reached in *Commonwealth v. Black,* 480 Pa. 394, 390 A.2d 750 (1978), where the language stated:

I say to you, the only way that you could possibly find Robert Black not guilty of murder in the first degree is if Sidney Adelman walked through that door right now.

That's not going to happen. Ask Mrs. Adelman if that's going to happen.

On several occasions, therefore, this Court has condemned the tactic of inducing juries to look at the rear of the courtroom as though by some miracle the deceased victim again would walk resurrected through the door. When the miracle failed to take place, the jury's anger easily could be foretold. There is no question that such statements presently constitute ground for mistrial if they are objected to by counsel. *Black, supra,* 480 Pa. at 396–397, 390 A.2d at 751.

The present case, nevertheless, raises the particular interrelated questions of whether the above-quoted language was improper or harmless as a matter of law in *March, 1973;* whether our subsequent decisions quoted above should have been predicted by trial counsel or apply retroactively in cases which allege ineffective assistance; and whether under *Maroney* the failure to object could have been designed reasonably to promote his client's interests.

Trial counsel, in this instance, was a former member of the Common Pleas bench who also had had wide experience in criminal defense work. The P.C.H.A. record demonstrates that he vigorously objected to several points of the prosecutor's remarks, but he also admitted that he did not take exception to the specific statement at issue here. In explaining his decision, he argued that the trial judge had overruled every one of his objections to the closing statement, and he was convinced that any other gesture also

would prove to be futile. More to the point, he insisted that it would have harmed his client to call the jury's attention once more to the fact that the victim would not walk through the door again.

As we proceed further in assessing this allegation of ineffectiveness, it is apparent to us that the impropriety of such language had not been prohibited at the time of trial. Even this experienced former judge and defense attorney believed that it was commonplace to employ such statements. Of equal importance is the fact that our jurisprudence long has maintained that we cannot impose a "hindsight evaluation of the record" in cases of ineffectiveness. *Maroney, supra,* 235 A.2d at 352. In *Triplett, supra,* 381 A.2d at 881, we ruled pointedly that:

> We cannot impose upon trial counsel the qualities of a seer.... For this reason, we examine counsel's stewardship under the standards as they existed at the time of his action, *Commonwealth v. Hill,* 450 Pa. 477, 301 A.2d 587 (1973); *Commonwealth v. Garrett,* [425 Pa. 594, 229 A.2d 922 (1967)]; and counsel will not be deemed ineffective for failing to predict future developments in the law. *See, Commonwealth v. Logan,* 468 Pa. 424, 364 A.2d 266 (1976); *Commonwealth v. Alvarado,* 442 Pa. 516, 276 A.2d 526 (1971).

*Triplett* was decided in 1977 and held that ineffectiveness will not lie based on an allegation that trial counsel failed to predict legal changes. Moreover, we emphasize once again that the offensive language had not been held to be objectionable at the time of trial. It is clear that there was no issue to be preserved below and counsel, therefore, could not be deemed to be ineffective for failing to object to acceptable closing arguments.

The Order of the Superior Court is reversed and the judgment of sentence is reinstated.

LARSEN and FLAHERTY, JJ., concur in the result.