645 A.2d 199

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Henry FAHY, Appellant.**

Supreme Court of Pennsylvania.

Submitted June 18, 1993.

Decided July 1, 1994.

* Mr. Justice Montemuro is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket No. 94 R1801, due to the unavailability of Mr. Justice Larsen, see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.

534

Louis Natali, Norris E. Gelman, Philadelphia, for appellant.

Catherine Marshall, Chief, Appeals Unit, Hugh J. Burns, Jr., Asst. District Atty., Robert A. Graci, Chief Deputy Atty. Gen., for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

The sole issue raised in this direct appeal from the denial of the Appellant's petition filed pursuant to the Post Conviction Relief Act (the "PCRA") 42 Pa.C.S. § 9541, *et seq.*, is whether the Appellant is entitled to a new sentencing hearing because his trial counsel failed to object to a jury instruction regarding the aggravating circumstance of the killing of another committed by means of torture which did not provide a definition of the term "torture." For the reasons set forth below, we find that he is not so entitled and we affirm the ruling of the PCRA court upholding the Appellant's sentence of death.

Following a 1983 jury trial in the Philadelphia County Court of Common Pleas, Appellant was convicted of first-degree murder, rape, burglary and possession of an instrument of crime and sentenced to death for his killing and torture of twelve-year-old Nicky Caserta in 1981.[1]

Pursuant to 42 Pa.C.S.A. § 9711(d), the jury found three aggravating circumstances: a slaying during the perpetration of a felony,[2] a significant history of convictions for violent felonies [3] and a homicide committed by means of torture.[4] Pursuant to 42 Pa.C.S.A. § 9711(e), the jury also found two mitigating circumstances: extreme mental or emotional disturbance,[5] and impaired capacity to appreciate the criminality

---

1. The Appellant was also sentenced to ten to twenty years on the burglary conviction, two and one-half to five years on the weapons conviction and ten to twenty years on the rape conviction. The burglary and rape sentences were to run concurrently with each other but consecutively to the sentence for the murder conviction. The weapons sentence was to run consecutively to the burglary and rape sentences.

2. 42 Pa.C.S. § 9711(d)(6).

3. 42 Pa.C.S. § 9711(d)(9).

4. 42 Pa.C.S. § 9711(d)(8).

5. 42 Pa.C.S. § 9711(e)(2).

of his conduct or to conform his conduct to the requirements of law.[6]   Post-verdict motions were heard and denied.

On direct appeal, this Court sustained Appellant's conviction and judgment of sentence and found that the evidence sufficiently supported his conviction and the jury's finding of aggravating circumstances.[7]   *Commonwealth v. Fahy,* 512 Pa. 298, 516 A.2d 689 (1986).   Appellant filed a *pro se* Post Conviction Hearing Act (PCHA) petition in 1987 alleging several errors.   Relief was denied without prejudice for procedural errors.   In 1989, counsel was appointed to file a supplemental PCHA petition on a prior rape conviction but not for the murder conviction.   The Governor signed Appellant's death warrant in November 1991, scheduling the execution for the week of January 13, 1992.   On January 7, 1992, however, Appellant retained counsel who in turn filed a Petition for Stay of Execution and Appointment of Counsel with this Court.   Specifically, counsel asserted, as the basis for the stay, that the applicability of the finding of torture in this case was erroneous.

On January 13, 1992, this Court granted the Appellant's petition and remanded the case back to the Philadelphia County Court of Common Pleas for reconsideration of the torture issue pursuant to the standards articulated in *Commonwealth v. Caldwell,* 516 Pa. 441, 532 A.2d 813 (1987).   At the PCRA hearing held pursuant to the remand order, Appellant argued that the death penalty was arbitrarily imposed because the jury improperly found the aggravating circumstance of torture because the trial court failed to define "torture" for the jury and that trial counsel was ineffective for failing to object to the inadequate charge in that regard.   The

6.   42 Pa.C.S. § 9711(e)(3).

7.   This Court also found that (1) the evidence supported the finding that Appellant's confession was voluntary; (2) the evidence supported the finding that Appellant's waiver of his constitutional rights was knowing and intelligent; (3) no prosecutorial misconduct arose at trial; (4) the aggravating circumstances portion of the death penalty statute was not unconstitutionally vague or overbroad; (5) the finding of substantial mental impairment does not preclude imposition of the death penalty; and (6) the Appellant's death sentence was not disproportionately imposed.

PCRA court rejected Appellant's argument and affirmed the sentence of death on the basis that this Court, pursuant to 42 Pa.C.S.A. § 9711(h), had already determined that the evidence was sufficient with regard to the aggravating circumstance of torture. *Commonwealth v. Fahy*, Nos. 2283–2289 (Phila.C.C.P. Dec. 8, 1992).

The sole issue now before this Court is whether the PCRA court erred in affirming the sentence of death because Appellant's trial counsel did not request that the trial court define "torture" as an aggravating circumstance which requires a specific intent to commit torture separate from the specific intent to commit murder. The trial judge's jury charge in this case informed the jurors that a list of possible aggravating circumstances was included on the verdict sheet on which they were to indicate whether they believed such circumstances applied to the Appellant's actions. No definition of "torture" was given by the trial judge, nor was a definition requested by defense counsel. An instruction that specific intent to torture the victim was needed in order to properly find torture as an aggravating circumstance was not required by this Court at the time.[8] Without such an instruction, Appellant claims that the instruction was prejudicially deficient and violative of his rights to the due process of law. He also claims that trial counsel was ineffective for failing to object to such a deficient instruction. For the reasons set forth below, we affirm the ruling of the PCRA court upholding the Appellant's sentence of death.

Section 9711(d)(8) of the Sentencing Code provides that the death penalty may be imposed where the jury finds that the "offense was committed by means of torture." 42 Pa.C.S. Section 9711(d)(8). This case illustrates perhaps the clearest

---

**8.** This Court did not require additional guidance regarding "torture" until *Commonwealth v. Nelson*, 514 Pa. 262, 523 A.2d 728, 737 (1987), at which time we held that a jury charge on the aggravating circumstance of torture, which failed to convey to jurors the idea that a torture murderer, besides having intent to kill, has additional specific intent to inflict pain, suffering or both pain and suffering, was prejudicially deficient and, thus, required that the death sentence be vacated. The appellant's trial was held in 1983, four years before the law changed.

example of a factual situation that the legislature intended to serve as an aggravating circumstance of torture sufficient to impose the death penalty. In that regard, it is precisely because the facts of this case are so egregious that we are able to conclude that there was no error in trial counsel's failure to request a definition of the term "torture" for the jury because, pursuant to any conceivable definition of the term, Nicky Caserta was tortured to her death.

Indeed, the evidence produced at trial showed that the final hours of Nicky Caserta's life were marked by unspeakable horrors, inflicted to satiate the sadistic appetite of the Appellant. She was beaten, raped, mutilated, hung, choked, kicked, strangled and, finally, stabbed multiple times until life finally ebbed from her small body.[9] From a vantage point across the street, the Appellant watched as Nicky's mother left for work on the morning of January 9, 1981. He proceeded across the street and was let in the Caserta home by Nicky. The Appellant was well known to Nicky because he and Nicky's aunt were living together nearby. The Appellant asked Nicky to go upstairs and look for a pair of pliers for him. As soon as Nicky went up the steps, he locked the front door and followed her. Appellant then seized her, stuffed tissue in her mouth, wrapped a sweater around her face, and forced her to disrobe. Then, he raped her vaginally and anally. The injuries indicate that Appellant also violated his victim with some object that ripped the tissue of her genitals from the interior of the vagina to her rectum. Appellant then allowed the victim to dress, creating a cruelly false impression that the ordeal had ended. When Nicky, in a state of dazed terror, put her parochial school uniform on backwards, Appellant became enraged. He grabbed her and dragged her downstairs to the basement with his free hand around her mouth to stifle her cries. In the basement, while chanting, "Die, bitch," Appellant tied a series of ligatures around the girl's throat and watched her struggle for breath. He repeatedly choked Nicky

9. This recitation of the facts of the case summarizes the facts from this Court's opinion in *Fahy*, 512 Pa. at 301, 516 A.2d at 695 and from the Notes of Testimony at 485–558.

to a certain point and then released his hold, allowing her to fight for breath again. At one point he apparently suspended the girl from a rafter by her neck. Finally, apparently having tired of this depravity, Appellant secured a kitchen knife and stabbed Nicky 18 times in the chest, to her death, with such force that he broke off part of the blade finally causing her death.

Appellant alleges that his counsel was ineffective for failing to request a definition of the term "torture" because if the jury had been given and guided by such an instruction, it might not have found that he tortured his victim. Essentially, Appellant's claim amounts merely to the argument that his trial counsel was ineffective for failing to assert that the evidence was insufficient to support the jury's finding of torture. We have long maintained that a criminal defendant's trial counsel cannot be held ineffective for failing to assert a meritless claim. *Commonwealth v. Moore,* 534 Pa. 527, 633 A.2d 1119 (1993). Here, when this Court reviewed Appellant's direct appeal for the sufficiency of the evidence supporting the finding of the aggravating circumstance of torture and sustained Appellant's conviction and judgment of the sentence of death, we found, as a matter of law, that the jury's finding of torture was sufficiently supported by the trial evidence. *Fahy, supra. See also* 42 Pa.C.S.A. § 9711(h)(3)(ii) ("[t]he Supreme Court shall affirm the sentence of death unless it determines that the evidence fails to support the finding of at least one aggravating circumstance. . . ."). Because of this Court's specific review and verification of the sufficiency of the evidence, Appellant's ineffectiveness claim fails because there is utterly no merit to his underlying claim that counsel was ineffective for failing to assert that the evidence supporting the jury's finding of torture was legally insufficient.

Further, this Court has previously found that the term "torture" as an aggravating circumstance is not constitutionally vague and that its meaning is "a matter of common knowledge." *Nelson, supra; Commonwealth v. Pursell,* 508 Pa. 212, 238, 495 A.2d 183, 196 (1985). In *Pursell,* this Court held that the general meaning of "torture" was the "infliction of a

considerable amount of pain and suffering on a victim which is unnecessarily heinous, atrocious, or cruel manifesting exceptional depravity." 508 Pa. at 239, 495 A.2d at 196. Nevertheless, despite the apparent unambiguity of the term "torture," the Appellant contends that a new sentencing hearing is required because his trial attorney did not ask that the jury be instructed that to find "torture" as an aggravating circumstance, it must first find that Appellant additionally had to have the specific intent to inflict torture. Notably, it was not until *Nelson, supra,* approximately four years after Appellant's conviction, that this Court decided that juries required guidance that "torture," as an aggravating circumstance, meant that the accused's criminal acts must have a separate specific intent to cause pain and suffering in addition to the intent to kill.[10] *Id.,* 514 Pa. at 279, 523 A.2d at 737.

In the instant case, the trial court informed the jury that the aggravating circumstances were listed on the verdict sheet and that they were to indicate thereon whether they believed such circumstances applied to Appellant's actions. While "torture" was not defined by the court, "torture" and "kill" are two separate and commonly understood acts.[11] The Appellant would have this Court assume that the jury, composed of twelve adults chosen from the community, nevertheless was incapable of applying the commonly understood meaning of the term "torture" in order to have found that "torture" existed as an aggravating circumstance or that

10. For this reason, *Commonwealth v. Caldwell, supra* (the case pursuant to which the PCRA court was to re-examine the Appellant's death sentence), is inapplicable to Appellant's claim. In *Caldwell,* this Court found that there was insufficient evidence to support a finding of torture. The definition of torture was not contested—only the sufficiency of the evidence supporting the finding of torture was contested. *Caldwell,* then, does not dispose of the issue raised by Appellant herein; namely, that the failure of the trial court to define "torture" denied him, for trial counsel's failure to object, the effective assistance of counsel.

11. "Kill" is defined as "[t]o deprive of life; to destroy the life of an animal or person." Black's Law Dictionary, page 870 (6th Ed.1990). "Torture" is defined as "[t]o inflict intense pain to body or mind for purposes of punishment, or to extract a confession or information, or for sadistic pleasure." *Id.* at p. 1490.

Appellant intended his torture.[12] Given the evidence in this case, there is no question that the jury was provided with ample facts to conclude beyond a reasonable doubt that Appellant intended to torture his victim as well as to kill her. The evidence clearly indicated that Appellant inflicted a considerable amount of pain and suffering more than that necessary to bring about her death and which was unnecessarily heinous, atrocious, or cruel manifesting exceptional depravity. *See Pursell, supra.* Accordingly, from the nature of the acts themselves one can logically infer that the Appellant intended to torture his victim.[13]

Appellant's rape, vaginal mutilation and strangulation of his young victim were unquestionably committed with the intent to cause pain and suffering in addition to his final act of stabbing the victim eighteen times, which itself was performed with the clear intent to kill.[14]

Further, given that this Court did not require additional direction regarding the term "torture" until several years after Appellant's conviction, it is difficult to fathom how trial counsel was ineffective for not requesting an instruction regarding a term which this very Court had at the time of trial found to be commonly understood. In order for counsel to be

**12.** Indeed, the jury did not request any guidance during its deliberations as to what "torture" meant. Thus, there is no articulable basis upon which to assume that the jury was somehow unable to comprehend the plain meaning of the term. Because the facts which the jury in this case considered were so clearly dispositive of the concept of "torture," this Court would divert the law down a very uncertain path should it now second-guess their sound determination.

**13.** Further, in spite of the fact that there was no "specific intent to torture" instruction given to the jury in this case, it is well settled that specific intent may be proven from circumstances surrounding the event. *Nelson, supra.* Stated differently, if the facts of this case indicate that Appellant inflicted an amount of pain and suffering less than that necessary to bring about his victim's death, then from the nature of the acts themselves one can logically infer that the Appellant intended to torture his victim.

**14.** The circumstances surrounding Nicky's death sufficiently proved that Appellant had specific intent to torture her. Let us not forget that part of the evidence before the jury during the penalty phase included Appellant's testimony that "he had an inner compulsion to abuse young children sexually." *Fahy,* 512 Pa. at 316, 516 A.2d at 698.

ineffective, the appellate court must find that the attorney did not have a reasonable basis for his or her omission or act. Here, trial counsel had a reasonable basis for not requesting further guidance since the term was and is so commonly understood. *Commonwealth v. Jasper*, 526 Pa. 497, 507, 587 A.2d 705 (1991) (trial counsel not ineffective for failing to request a jury instruction regarding the term "knowingly" during the penalty phase since term commonly understood); *Commonwealth v. Proctor*, 526 Pa. 246, 256, 585 A.2d 454, 459 (1991) ("It is reasonable for counsel to decline to ... enter objections which are ... unsupported by law existing at the time of the proceedings").[15] Moreover, had a more detailed instruction been provided regarding the term "torture," its impact would have been only to highlight the already-obvious egregious and depraved acts which the jury found as an aggravating circumstance amounting to "torture."

This Court has repeatedly held that a criminal defendant's ineffectiveness claim must also fail if he cannot show that, absent his counsel's alleged ineffectiveness, the result in his case would have been different. *Commonwealth v. Edmiston*, 535 Pa. 210, 634 A.2d 1078 (1993) (citation omitted). Given the overwhelming evidence in this case, the Appellant has utterly failed to demonstrate how the verdict in this case would have been different but for his trial counsel's purported omission. Viewed under these well-established standards, Appellant's claim that trial counsel was ineffective must fail.

In this case, the jury applied its common understanding of the word "torture" to the facts it found to be credible in finding Appellant guilty of first-degree murder and to find that Appellant, indeed, had tortured young Nicky Caserta. There is no merit, then, to this Appellant's claim that his

---

**15.** Although conceding that it was not until this Court's decision in *Nelson, supra,* that the ever-evolving concept of due process subsumed the requirement of a definitional instruction of the term "torture," the dissent makes the illogical argument that "[a]lthough counsel cannot be responsible for anticipating future developments in the law [i.e., *Nelson*], he is surely responsible for assuring that his client receives due process." Before *Nelson,* due process simply did not require such a definition. How the law is to reconcile the conflict inherent in this statement remains a mystery indeed.

counsel was ineffective and that a remand for a new sentencing hearing is required, now raised for the first time over ten years after Appellant's conviction and sentence to death for his heinous acts.

This Court's January 13, 1992 Stay of Execution is therefore vacated and Appellant's conviction and his sentence of death are affirmed.

NIX, C.J., and MONTEMURO, Senior Justice, file concurring opinions.

ZAPPALA and CAPPY, JJ., file dissenting opinions.

MONTEMURO, J., is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket No. 94 R1801, due to the unavailability of LARSEN, J., see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.

NIX, Chief Justice, concurring.

I concur in the conclusion that Appellant's counsel was not ineffective for failing to object to a jury instruction which lacked a definition of torture. Additionally, I do not believe that counsel was ineffective for failing to request an instruction defining torture. In *Commonwealth v. Nelson,* 514 Pa. 262, 523 A.2d 728, *cert. denied, Pennsylvania v. Nelson,* 484 U.S. 928, 108 S.Ct. 293, 98 L.Ed.2d 253 (1987), this Court held that a jury instruction which lacked a legal definition of torture was prejudicially deficient. Prior to the *Nelson* decision in 1987, it was the belief of this Court "that the meaning of [the term 'torture' was] a matter of common knowledge, so that an ordinary man would not have to guess at what was intended." *Commonwealth v. Pursell,* 508 Pa. 212, 238, 495 A.2d 183, 196 (1985) (citation omitted). It is therefore difficult to conceive of a legitimate basis that would justify a finding of ineffectiveness of Appellant's counsel for failing to request the legal definition of a jury instruction that was not required at the time.

As I stated in my concurrence in this case on direct appeal, "I believe the circumstances justified the jury in concluding

that the defendant intended not only to take the life of this young child but also to do it in such a manner that would cause excruciating pain." Accordingly, I concur in the affirmance of the judgment of sentence.

MONTEMURO, Senior Justice, concurring.

I join in the affirmance of appellant's conviction and sentence of death. However, due to the fact that in reaching this result the majority continues to cling to the interpretation of 42 Pa.C.S. § 9711(d)(8) articulated by this court in *Commonwealth v. Nelson*, 514 Pa. 262, 523 A.2d 728 (1987), *cert. denied*, 484 U.S. 928, 108 S.Ct. 293, 98 L.Ed.2d 253 (1987), I write separately for I feel *Nelson* is based on a misreading of section 9711(d)(8) and should be overruled.

The majority today holds that appellant's claim of ineffective assistance fails on the ground that appellant was not prejudiced by his trial counsel's failure to request that a definition of the word torture be given to the jury by the trial court. This conclusion rests on the premise that a jury could infer solely from the gruesome facts of this case that in addition to the intent to kill appellant also possessed the separate specific intent to inflict an extreme amount of pain and suffering upon the victim which *Nelson* requires for section 9711(d)(8) to apply as an aggravating circumstance. *See Commonwealth v. Caldwell*, 516 Pa. 441, 532 A.2d 813 (1987), *reh'g denied*, 520 Pa. 69, 550 A.2d 785 (1988) (defendant's act of slashing the victims' throats was insufficient to establish that the offense was committed by means of torture even though victim did not die instantaneously since efficacy of means employed did not establish that the defendant specifically intended to cause pain and suffering or was not satisfied with the killings alone); *Commonwealth v. Crawley*, 514 Pa. 539, 526 A.2d 334 (1987) (absence of instruction that in order to establish that the offense was committed by means of torture the Commonwealth must prove that the defendant had the specific intent to inflict pain, suffering, or pain and suffering in addition to the specific intent to kill was prejudicially deficient). I now write separately for I believe this analysis begs the question of

whether Nelson's requirement of a separate intent to torture is a correct interpretation of the language of section 9711(d)(8). Since I believe it is not, I believe *Nelson* should be discarded.

42 Pa.C.S. § 9711(d)(8) provides for the finding of an aggravating circumstance when "the offense was committed by means of torture" not whether the offense was committed with the intention to torture. The legislature's use of the word "means" requires a focus on the modus operandi by which an actor's intent to kill is effectuated as opposed to the actor's intentions. Nevertheless, this court in *Nelson* and its progeny has created an additional element of intent to torture which is simply not found in the language of the statute. This is incorrect. What is proscribed is an intentional killing that is inflicted by means of intense pain, regardless of the actors intentions. As stated by Justice McDermott in his dissent in *Nelson:*

> A killing by "means of torture" does not require that torture be the reason for the employment of painful means. The means of killing are evidence of intention that when proved are subsumed by the intention to kill, and where that intention is manifested by the unnecessary infliction of pain the torture proscribed by the statute may be considered in imposing sanction.
>
> What is proscribed is the infliction of pain that accompanies the intention to kill. It cannot matter to the victim that his killer is a bungler, unfamiliar with the state of the art, or did his best with the means at hand. If the means employed inflict pain as defined in *Pursell,* [508 Pa. 212, 238, 495 A.2d 183, 196 (1985) ], the killer ought not be heard to say that the pain was a mere by-product of his killing.

*Nelson,* 514 Pa. at 284, 523 A.2d at 739 (McDermott, J., dissenting).

Under the brutal facts of the instant case, I do not believe that an instruction informing the jury that section 9711(d)(8) requires an intentional killing inflicted by means causing excruciating pain for the aggravating circumstance to apply

would in any way change the outcome of appellant's sentencing proceeding. A jury is perfectly capable of arriving at such a definition through their common understanding of the phrase "by means of torture." Thus, I agree with the majority that appellant's claim fails the prejudice prong of the test for ineffective assistance of counsel.

I disagree, however, with the majority's conclusion that if *Nelson*'s definition of torture were given to the jury in the present case there is no reasonable probability that the outcome of the proceeding would be different. I do not believe the laymen's understanding of the words "by means of torture" incorporates the concept of a separate intent to torture which *Nelson* requires. Thus, if the jury were given the definition of torture articulated in *Nelson*, I believe there is a reasonable possibility that at least one juror could find that the aggravating circumstance of "the offense was committed by means of torture" did not apply. Hence, I would hold that appellant has satisfied the prejudice prong of the test for ineffective assistance of counsel as set forth in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987), if the court chooses to continue to employ the *Nelson* interpretation of section 9711(d)(8).

Finally, I would note that even if appellant is able to establish the prejudice necessary to sustain a claim of ineffective assistance of counsel under *Pierce*, I would nonetheless affirm the judgment of sentence against appellant. This is due to the fact that *Nelson*, upon which appellant relies, was not announced until four years after appellant's trial. This court has consistently held that counsel cannot be found ineffective for failing to anticipate changes in the law. *Commonwealth v. Johnson*, 516 Pa. 407, 532 A.2d 796 (1987); *Commonwealth v. Garrity*, 509 Pa. 46, 500 A.2d 1106 (1985); *Commonwealth v. Triplett*, 476 Pa. 83, 381 A.2d 877 (1977). Nor does the severity of sentence in the present case affect the application of this principle because we have previously applied it under similar facts in *Commonwealth v. Yarris*, 519 Pa. 571, 605–606, 549 A.2d 513, 530–531 (1988), *cert. denied*,

491 U.S. 910, 109 S.Ct. 3201, 105 L.Ed.2d 708 (1989). The judgment of sentence should be affirmed.

ZAPPALA, Justice, dissenting.

I respectfully dissent. A manifest injustice results from the majority permitting Appellant's sentence of death to stand when the same would be vacated if it arose on direct appeal today. In sustaining Appellant's sentence of death, the majority focuses on the horrifying facts of this case and loses sight of the legal issue. Simply stated, the law of this Commonwealth requires that an instruction be given defining the aggravating circumstance of torture. No instruction whatsoever was given in the instant case. Counsel was ineffective for failing to object and request such an instruction. Accordingly, I would vacate Appellant's sentence of death and remand the case for a new sentencing hearing so that the jury would be instructed on the definition of torture as an aggravating circumstance.

The majority states that "[t]he appellant would have this court assume that the jury, composed of twelve adults chosen from the community, nevertheless was incapable of applying the commonly understood meaning of the term 'torture' in order to have found that 'torture' existed as an aggravating circumstance or that Appellant intended his torture." (Maj. op. at 540). What Appellant suggests is precisely the law of this Commonwealth. In *Commonwealth v. Nelson*, 514 Pa. 262, 523 A.2d 728 (1987), our Court decided that a jury instruction lacking a definition of torture was prejudicially deficient and counsel was ineffective for not objecting to the inadequate charge. Our Court again found that the absence of an instruction defining torture was prejudicially deficient in *Commonwealth v. Crawley*, 514 Pa. 539, 526 A.2d 334 (1987), and *Commonwealth v. Wharton*, 530 Pa. 127, 607 A.2d 710 (1992).[1] The failure to apply this law to the instant case is unwarranted.

1. It should be noted that both *Crawley* and *Wharton* involved terribly heinous acts, gruesomely comparable to those in the instant case, yet the aggravating circumstance of torture was not upheld, due to the lack

548

I fail to understand how a jury of twelve persons in the community is capable of defining torture, when this Court has wrestled with that very definition for years. A definition is hardly crystal clear when even legal scholars cannot decipher its precise meaning.[2]

The majority correctly asserts that the trial of the instant case was held in 1983 and that it was not until *Nelson* was decided in 1987 that our Court concluded that juries require guidance as to the definition of the aggravating circumstance of torture. (Maj. op. at 537, footnote 8). Should we therefore resolve the case before us assuming that only juries subsequent to *Nelson* require this guidance whereas juries prior thereto were somehow otherwise enlightened as to the definition of the term? Due process requires that such guidance be given in order to ensure that the death penalty is imposed only in certain circumstances narrowly set forth by the legislature.[3]

Similarly, the majority reiterates that our Court "did not require additional direction regarding the word 'torture' until several years after Appellant's trial...." (Maj. op. at 541). It was not until 1987 in *Nelson* that a case came before us raising the issue of whether counsel was ineffective for failing to request an adequate charge. Appellant did not challenge counsel's effectiveness in this regard on direct appeal because he was still represented by trial counsel. Rather, he first

of an instruction defining torture. Also, there is no evidence that the juries in either *Crawley* or *Wharton* requested guidance during deliberations as to what torture meant. The fact that no guidance was requested in the instant case is therefore of no moment.

2. The definition of torture has evolved since *Commonwealth v. Pursell*, 508 Pa. 212, 495 A.2d 183 (1985). Since that time, we have concluded that the fact that an act was heinous and atrocious is not conclusive evidence that the act was committed by means of torture. The defendant must also have the specific intent to cause pain and suffering to the victim and not be satisfied with the killing alone. *Commonwealth v. Caldwell*, 516 Pa. 441, 532 A.2d 813 (1987).

3. It is the responsibility of the courts to "channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.' " *Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S.Ct. 1759, 1764–65, 64 L.Ed.2d 398 (1980).

raised the contention when he was represented by other counsel in his PCRA petition. He is therefore in the same position as Nelson was when, represented by counsel other than trial counsel, he raised the same issue in direct appeal.

I recognize that a legal definition of torture was not established at the time of trial. Counsel, however, should have requested some guidance from the court so that the sentence of death would not be arbitrarily imposed.

A similar predicament arose in *Commonwealth v. Pursell,* 508 Pa. 212, 495 A.2d 183 (1985). No legal definition of torture had been formulated at the time of trial, yet the court gave the jury a charge which contained a guiding definition of the term. Without prior supporting caselaw, the trial court in *Pursell* provided a charge that satisfied due process requirements. The same is not true in the instant case. Although counsel cannot be responsible for anticipating future developments in the law, he is surely responsible for assuring that his client receives due process.

I also find unpersuasive the majority's comparison of the instant case with *Commonwealth v. Jasper,* 526 Pa. 497, 587 A.2d 705 (1991). In *Jasper,* the appellant argued that the trial court failed to define "knowingly" in the context of the aggravating circumstance providing that the defendant "knowingly created a grave risk of death to another person in addition to the victim." 42 Pa.C.S. § 9711(d)(7). We there held that "the term 'knowingly' used in § 9711(d)(7) does not require a unique understanding of the word." 526 Pa. at 508, 587 A.2d at 711. We also stated, "there is no unusual legal significance to the term 'knowingly' in this instance which would require knowledge other than its common usage." *Id.* The same is not true for the word "torture." Unlike the word "knowingly" in § 9711(d)(7), "torture" is a substantive term of the aggravating circumstance of § 9711(d)(8).

The majority further concludes that "Appellant has utterly failed to demonstrate how the verdict in this case would have been different but for his trial counsel's purported omission." (Maj. op. at 542). I believe it is impossible for Appellant to

make such a demonstration. There is no way to discover the effect of the failure to instruct on the definition of torture without knowledge of what the jurors considered in their deliberations.

Accordingly, due to the severity of the sentence imposed, I would apply *Nelson* and its progeny to the instant case and find counsel ineffective for failing to request an instruction defining the aggravating circumstance of torture.

CAPPY, Justice, dissenting.

I dissent from the Opinion of the Court, but for different reasons than those expressed by Mr. Justice Zappala. I believe that the trial court's decision cannot be affirmed because, contrary to the Majority's characterization, the trial court made no explicit finding regarding Appellant's ineffectiveness claim in the proceeding following this Court's January 13, 1992 order. To some extent, the trial court's failure to do so is understandable, as a brief history of this case will show.

On direct appeal, this Court affirmed Appellant's conviction and sentence of death. *Commonwealth v. Fahy*, 512 Pa. 298, 516 A.2d 689 (1986). On November 21, 1991, Governor Casey signed an Execution Warrant; the execution was scheduled for January 14, 1992. On January 13, 1992, this Court entered a Per Curiam order stating:

> The Petition for Stay of Execution and Appointment of Counsel is granted. The matter is remanded to the Court of Common Pleas of Philadelphia County pursuant to the Post–Conviction Relief Act for appointment of counsel and a hearing for consideration of the torture issue under *Commonwealth v. Caldwell*, 516 Pa. 441, 532 A.2d 813* 814 (1987).

On June 12, 1992, we denied a Petition to Clarify this order.

On remand, the trial court conducted a hearing and "analyze[d] the aggravating circumstance of torture in accordance with the definition stated in *Commonwealth v. Caldwell*." (Trial Court Opinion at p. 6.) After reviewing the facts surrounding Appellant's crime, the court concluded that

the jury properly found the aggravating circumstance of torture, that the facts of this case come within the definition of torture as defined by *Caldwell* and that defendant's sentence of death should once again be affirmed by the Supreme Court.

(*Id.* at p. 7.) From this discussion, it is apparent that the trial court conducted a review of the sufficiency of the evidence to establish torture. The court did not, however, make any findings regarding any alleged ineffectiveness of trial counsel.

I believe that the trial court's actions were understandable, given this Court's remand order, which referred to *Caldwell,* and our subsequent refusal to clarify that order. *Caldwell* was a case in which this Court held that the evidence was insufficient to support the jury's finding that the offense was committed by means of torture. We found that the evidence did not establish that "the defendant had a specific intent to inflict unnecessary pain, suffering, or both pain and suffering in addition to the specific intent to kill," which was required under the definition set forth in *Commonwealth v. Nelson,* 514 Pa. 262, 523 A.2d 728 (1987), and *Commonwealth v. Pursell,* 508 Pa. 212, 495 A.2d 183 (1985).

The Majority concludes that Appellant's ineffectiveness claim is disposed of by this Court's finding on direct appeal that the evidence was sufficient to establish the aggravating circumstances. I disagree, for the two issues are distinct. This Court has held that, in order to establish a claim of ineffectiveness, the Appellant must show that the underlying claim is of arguable merit; that the particular course of conduct chosen by counsel did not have some reasonable basis designed to effectuate Appellant's interests; and that counsel's ineffective stewardship prejudiced him—*i.e.,* that counsel's ineffectiveness "had an adverse effect on the outcome of the proceedings." *Commonwealth v. Pierce,* 515 Pa. 153, 162, 527 A.2d 973, 977 (1987). The essence of the Majority's position is that Appellant cannot establish prejudice. However, the fact that this Court may have determined that the evidence presented was sufficient to support a finding of torture is a red herring; that finding does not lead inexorably

to the conclusion that Appellant was not prejudiced. The claim here is that a jury, if given further instructions than were provided in this case, might not have found torture or, even if it found torture, might have weighed the aggravating and mitigating circumstances differently and rendered a sentence of life imprisonment rather than death. If either of those outcomes had resulted, this Court would not have been called upon to review the sufficiency of the evidence of torture. *See* 42 Pa.C.S. § 9711(h). This is the heart of Appellant's ineffectiveness claim.

This Court cannot review Appellant's ineffectiveness claim until Appellant is given a hearing at which he may present facts to establish the three prongs of an ineffectiveness claim as set forth in *Commonwealth v. Pierce, supra,* 515 Pa. 153, 527 A.2d 973.[1]

Accordingly, I would remand to the trial court for a hearing into Appellant's claim that trial counsel was ineffective for failing to object to the trial court's jury instruction on the aggravating circumstance of "torture," where the instruction merely tracked the statutory language ("The offense was committed by means of torture," 42 Pa.C.S. § 9711(d)(8)) and did not provide a definition of "torture."

---

**1.** Appellant cannot establish an ineffectiveness claim by relying solely upon *Commonwealth v. Nelson, supra,* because *Nelson*—which first introduced the requirement that the trial court give an instruction defining torture—was announced four years after Appellant's trial. This Court has consistently held that counsel cannot be found ineffective for failing to anticipate changes in the law. *See, e.g., Commonwealth v. Johnson,* 516 Pa. 407, 532 A.2d 796, 802 (1987); *Commonwealth v. Garrity,* 509 Pa. 46, 500 A.2d 1106, 1111 (1985); *Commonwealth v. Triplett,* 476 Pa. 83, 381 A.2d 877, 881 (1977). Because "[w]e cannot impose upon trial counsel the qualities of a seer ..., we examine counsel's stewardship under the standards as they existed at the time of his action." *Triplett,* 476 Pa. at 89, 381 A.2d at 881. The "severity of the sentence imposed" is not, as Mr. Justice Zappala suggests, cause for abandonment of this principle, for we have applied it in the past even where it resulted in affirming a sentence of death. *See Commonwealth v. Yarris,* 519 Pa. 571, 549 A.2d 513, 530–31 (1988), *cert. denied,* 491 U.S. 910, 109 S.Ct. 3201, 105 L.Ed.2d 708 (1989).