J-S23006-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA

v.

MATTHEW WHEELER

Appellant

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 488 EDA 2021

Appeal from the PCRA Order Entered February 10, 2021
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0006522-2018

BEFORE:   LAZARUS, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED OCTOBER 4, 2021**

Matthew Wheeler appeals from the order, entered in the Court of Common Pleas of Bucks County, denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.   After careful review, we affirm.

The PCRA court set forth the underlying facts of the case as follows:

In the fall of 2012, [E.C.] (Victim) was twelve years old and living half of the time with her mother, [] (Mother), and [] half [] with her father, [] (Father).  Victim's parents divorced outside of court and began the fifty-fifty custody arrangement when Victim was about three years old.  Around October-November of 2009, after six months of dating, [Wheeler] moved in with Mother.  At some point in August of 2012, [Wheeler] was fired from his job at a nuclear power plant for abusing alcohol, [which] escalated [Wheeler]'s drinking.

[D]uring the fall of 2012, [Wheeler] entered Victim's bedroom while heavily intoxicated and sat down on her bed.  [According]

_____

[*] Retired Senior Judge assigned to the Superior Court.

to Victim, [Wheeler] slid his hand down Victim's back . . . then pulled down the front of Victim's pajama pants, placed that hand on Victim's knee and ran it up her thigh [and] eventually digitally penetrated her. At the same time, with his other hand, [Wheeler] unzipped his jeans and masturbated. [Wheeler] continued [his actions] for about twenty minutes, until [he] ejaculated, [] stood up[,] and left Victim's room.

In September of 2012, [Wheeler] left Victim's household at Mother's request due to several reasons, [including, *inter alia*, Wheeler's] alcohol consumption. In March of 2016, Victim informed Mother that [Wheeler] had molested her after [Victim] f[ou]nd[] out that Mother [considered permitting Wheeler] back around the house. [Despite Victim's disclosure of Wheeler's assault to Mother,] Mother continued seeing [Wheeler]. However, around November of 2016, Mother [sought therapy services for] Victim [] with James P. Delpino[, a licensed therapist], who had previously [provided services to] Victim [between] forty to fifty times since 2003 following Mother and Father's divorce. It took Victim several months to discuss [Wheeler's actions with Delpino], and, despite being a mandated reporter, [] Delpino did not immediately report [Victim's] allegations[ on the theory that] trauma affects an affected person's memory.

On May 18, 2017, Victim texted Mother that she was "fairly certain" she was going to be kicked out of Father's house after she received several "mean" text messages from Father indicating that Victim was no longer welcome at his house, as well as a picture of her belongings in the trash. At that time, Father, who was extremely verbally abusive to Mother and Victim, had made it clear that he "hated" [Wheeler]. The day after she received those texts [from Father], Victim told Father that [Wheeler] had molested her back in 2012 and Father took Victim back into his house.

On May 22, 2017, Father set Victim up with a different therapist, Deborah Meyrowitz-Weiss[.] Victim once again recounted the incident with [Wheeler to Weiss]. The next day,[] both [] Weiss and [] Delpino reported Victim's statements to ChildLine. A few days later, Detective Peter Stark and Jennifer Lannetti, an investigator for Children and Youth Services (CYS), [visited] Victim's school and discussed the specifics of the ChildLine report with Victim.

PCRA Court Opinion, 4/19/21, at 1-3 (internal citations and footnote omitted; edited for clarity).

Northampton Township Police arrested Wheeler on August 30, 2018. On June 21, 2019, following a three-day trial, a jury convicted Wheeler of aggravated indecent assault of a child, aggravated indecent assault without consent, aggravated indecent assault of a person less than 16, indecent assault without consent of other, indecent assault of a person less than 13, and indecent exposure.[1]

On September 30, 2019, the court sentenced Wheeler to a period of sixty to one-hundred-twenty months' state incarceration, which sentence fell in both the mitigated and standard ranges. The court awarded Wheeler credit for time served, ordered him to comply with sexual offender registration and supervision, prohibited him from contacting Victim, and ordered him to pay $700 in restitution. Paul G. Lang, Esquire, represented Wheeler at trial, and Todd Mosser, Esquire, represented Wheeler for post-trial and direct appeal matters.

On October 11, 2019, Wheeler filed a post-sentence motion, challenging the weight of the evidence, which the court denied as untimely on October 31, 2019. On November 12, 2019, Wheeler filed a notice of appeal; however, on April 30, 2020, Wheeler withdrew the appeal. On July 1, 2020, Wheeler,

---

[1] **See** 18 Pa.C.S.A. §§ 3125(b), 3125(a)(1), 3125(a)(8), 3126(a)(1), 3126(a)(7), 3127(a), respectively.

through Sara M. Webster, Esquire, filed a PCRA petition requesting the grant of a new trial, or discharge, on seven different grounds.

On October 29, 2020, the PCRA court held an evidentiary hearing on Wheeler's petition. Attorney Lang, along with six other witnesses, testified at the hearing. On February 10, 2021, the PCRA court issued an order denying Wheeler's PCRA petition. On February 25, 2021, Wheeler filed a notice of appeal. Both Wheeler and the court subsequently complied with Pa.R.A.P. 1925.

On appeal, Wheeler raises the following issues for our review:

1. The PCRA court erred in dismissing the PCRA petition and denying the relief sought, a new trial, as the issues raised by [Wheeler] in his [petition] are all issues of arguable merit; [] counsel had no reasonable basis for his action or inaction; and[,] the PCRA court applied erroneous legal standards as to every claim. The specific errors made by [Attorney Lang] are:

a. Failing to move *in limine* to preclude[,] or object[,] when [trial witnesses] testi[fied] regarding [Victim]'s character as an honest person who does not lie and [Victim's] numerous inadmissible prior consistent statements.

b. Eliciting information that [Wheeler] consulted with counsel upon hearing that this matter was being investigated and thereafter failing to object when the prosecutor asked questions highlighting that [Wheeler] remained silent and never spoke with police.

c. Failing to object to impermissible [lay witness] testimony as to how child victims of sexual abuse behave.

d. Failing to object to the prosecutor's closing argument, which included the prosecutor linking the instant case to that of notorious offenders including Bill Cosby and Jerry Sandusky, attacking defense counsel as trying to "distract" the jury, and calling for jurors to convict [Wheeler] to permit Victim to begin to "heal."

2. The prejudice suffered by [Wheeler] was both individual and cumulative and the PCRA court erred in finding no prejudice.

Appellant's Brief, at 6-7 (re-ordered for ease of disposition).

In order to be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in section 9543(a)(2), which includes the ineffective assistance of counsel. 42 Pa.C.S.A. § 9543(a)(2)(i). A petitioner also must establish that his claims have not been previously litigated or waived. 42 Pa.C.S.A. § 9543(a)(3). An issue is previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." *Id.* at § 9544(a)(2). "[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, . . . on appeal or in a prior state postconviction proceeding." *Id.* at § 9544(b). Additionally, "the failure to litigate the issue prior to or during trial . . . or on direct appeal could not have been the result of any rational, strategic[,] or tactical decision by counsel." *Id.* at § 9543(a)(4).

The well-settled appellate standard of review for the PCRA court's grant or denial of a PCRA petition is for an abuse of discretion:

> This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions.

- 5 -

Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

***Commonwealth v. Benner***, 147 A.3d 915, 919 (Pa. Super. 2016).

Our Supreme Court has explained the method by which a PCRA petitioner may prove an ineffectiveness of counsel claim:

To be entitled to relief on an ineffectiveness claim, a PCRA petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. ***Commonwealth v. Chmiel***, [] 30 A.3d 1111, 1127 (Pa. 2011) (employing ineffective assistance of counsel test from ***Commonwealth v. Pierce***, [], 527 A.2d 973, 975-76 (Pa. 1987)). [***See also Strickland v. Washington***, 466 U.S. 668, 694 (1984).] Counsel is presumed to have rendered effective assistance. ***Commonwealth v. Ali***, [], 10 A.3d 282, 291 (Pa. 2010). Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim. ***Commonwealth v. Jones***, [] 912 A.2d 268, 278 ([Pa.] 2006). Finally, because a PCRA petitioner must establish all the ***Pierce*** prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis. ***Ali***, at 291.

***Commonwealth v. Treiber***, 121 A.3d 435, 445 (Pa. 2015). ***See also***

***Commonwealth v. Housman***, 226 A.3d 1249, 1260-61 (Pa. 2020).

"With regard to 'reasonable basis,' the PCRA court 'does not question whether there were other more logical courses of action which counsel could have pursued; rather, [the court] must examine whether counsel's decisions had any reasonable basis.'" ***Commonwealth v. Bardo***, 105 A.3d 678, 684 (Pa. 2014) (***citing Commonwealth v. Roney***, 79 A.3d 595, 604 (Pa. 2013)).

- 6 -

"Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Commonwealth v. Spotz*, 84 A.3d 294, 311–12 (Pa. 2014) (citation, quotation marks, and brackets omitted). "A court may not substitute its judgment for trial counsel's. The reasonableness of the choice may not be judged with the benefit of hindsight, but only from trial counsel's perspective." *Commonwealth v. Hawkins*, 894 A.2d 716, 731 (Pa. 2006) (quoting *Commonwealth v. Garrity*, 500 A.2d 1106, 1110 (Pa. 1985)).

Wheeler first alleges that Attorney Lang was ineffective for failing to object to testimony of specific instances of Victim's character for truthfulness, in violation of *Treiber*, *supra* at 457, and Pa.R.E. 608(b)(1), which prohibit the use of evidence of specific instances of conduct to support or attack a witness's credibility. Wheeler argues that Attorney Lang had no reasonable basis for failing to object to testimony by witnesses at trial that Victim was very reliable, had no history of lying, and maintained good grades before and after the sexual assault.[2] Wheeler claims that Attorney Lang's "post-hoc justification" for permitting this testimonial evidence—that it would provide a basis for arguing that nothing traumatic ever happened to Victim—has no relation to Victim's good grades, and provides "no explanation for allowing the

---

[2] *See* N.T. Jury Trial, 6/20/19, at 19, 71, 223.

- 7 -

separate and distinct testimony and argument that [Victim] remains truthful." Appellant's Brief, at 24. Essentially, Wheeler claims that evidence of the absence of Victim's behavior problems is unrelated to Victim's character for never lying, and therefore, Attorney Lang should have objected to witness testimony that Victim had never lied. **See** Appellant's Reply Brief, at 4. Wheeler concludes that he suffered prejudice and relies on our Supreme Court's decision in **Commonwealth v. Weiss**, 606 A.2d 439 (Pa. 1992). Wheeler is entitled to no relief on this claim.

The Commonwealth concedes—and we agree—that the testimony at issue was presented to the jury in an improper form, **see** Appellee's Brief, at 15, since it was not elicited in the form of reputation evidence. **See** Pa.R.E. 608(a); **see also Treiber**, **supra** at 457 (citing Pa.R.E. 608(b)(1)). Nevertheless, we find that Attorney Lang had a reasonable basis for permitting the testimony to be heard by the jury because that evidence advanced his own theory of the case.

Specifically, Attorney Lang's trial theory, which was consistent throughout opening and closing argument, was that Victim's sexual assault allegations were "atypical," did not make sense, and thus rendered the allegations incredible, given that Victim maintained an exemplary record in school and apparently suffered no outwardly noticeable negative consequences. **See** N.T. Jury Trial, 6/19/19, at 14-15 (opening argument);

*id.*, 6/21/19, at 11 (closing argument).[3] Attorney Lang relied on the admission of evidence of Victim's behavior before and after the alleged assault, including evidence that Victim did not have any history of lying to the adults in her life at the relevant times. *Id.* at 20 (closing argument). Attorney Lang posited that Victim fabricated the allegations to persuade Father to permit her to move back into his home after Father sent Victim the text messages that indicated that she was no longer welcome there, since Victim knew Father "hated" Wheeler. *Id.*, 6/19/19, at 16, 18, 22 (opening argument); *id.*, 6/21/19, at 8-10 (closing argument). Attorney Lang further theorized that Victim continued to allege the fabricated story because she felt pressured to do so for fear of disappointing those around her. *Id.*, 6/19/19, at 19-22 (opening argument).

Here, we find that the PCRA court's analysis that Attorney Lang had a reasonable basis for not seeking to preclude the challenged testimony is supported by the record. *See Benner*, *supra*; *see also* PCRA Court Opinion, 5/12/21, at 11. Indeed, we conclude that the admission into evidence of testimony of Victim's lack of negative expressed behavior, including that Victim did not lie to the adults in supervisory roles in her life, reasonably advanced Attorney Lang's theory that the case was atypical of other child sex assault cases and that the assault *sub judice* never took place. *See Bardo*, *supra*. Moreover, contrary to Wheeler's claim, the evidence elicited of specific

---

[3] The notes of testimony of the parties' opening and closing remarks to the jury are excerpted separately in the certified record.

instances of the minor Victim's lack of history of lying to the adult witnesses **demonstrated Victim's behavior at the relevant times**—*i.e.*, prior to, and after, Wheeler's alleged sexual assault—and was not admitted merely for the purpose of providing evidence that supported a finding that Victim had, and maintains, a character for truthfulness. We find that, because the reasonableness of Attorney Lang's theory may not be judged by hindsight, *see Hawkins*, *supra*, and it was, in fact, reasonable, Wheeler's ineffectiveness claim must fail. *See Chmiel*, *supra*; *Ali*, *supra*.

Next, Wheeler alleges Attorney Lang's ineffectiveness at trial on the basis that Attorney Lang failed to object to the admission of numerous consistent statements made by the Victim, which she allegedly made after her corrupting motive to fabricate arose. Wheeler suggests that Attorney Lang should have objected to the admission of statements Victim made to two therapists, to police, and Victim's testimony at the preliminary hearing. *See* Appellant's Brief, at 28-30. Specifically, Wheeler claims these now-challenged statements were inadmissible pursuant to *Commonwealth v. Hutchinson*, 556 A.2d 370 (Pa. 1989), *Commonwealth v. Bond*, 190 A.3d 664 (Pa. Super. 2018), and Pa.R.E. 613. Wheeler is not entitled to any relief on this claim.

Pennsylvania Rule of Evidence 613(c) governs the admissibility of a witness's prior consistent statements for rehabilitation purposes, and states:

> **(c)** Witness's Prior Consistent Statement to Rehabilitate. Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given

an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:

> **(1)** fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or
>
> **(2)** having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613(c). Further, the comment to the rule clarifies that

> [Rule] 613(c)(2) is arguably an extension of Pennsylvania law, but is based on the premise that when an attempt has been made to impeach a witness with an alleged prior inconsistent statement, a statement consistent with the witness's testimony should be admissible to rehabilitate the witness if it supports the witness's denial or explanation of the alleged inconsistent statement.

Pa.R.E. 613, cmt.

At trial, Victim testified on direct examination that Wheeler assaulted her **in the fall of 2012**. *See* N.T. Jury Trial, 6/19/19, at 52, 54. On cross-examination, Attorney Lang—in accordance with his theory of Victim's motive to fabricate, which was based on Father kicking her out of his home, Father's hatred for Wheeler, and the mounting pressure from investigators to maintain her criminal allegations against Wheeler—questioned Victim about why she had initially told police and Lannetti that the assault occurred in the **fall of 2013**. *Id.* at 119. On redirect examination, Victim insisted upon the version of the allegations that were consistent with her testimony on direct examination, *i.e.* the **fall 2012** timeline for the assault, and she again denied fabrication. *Id.* at 123-24.

- 11 -

Here, we find that the PCRA court's analysis pursuant to Rule 613(c)(2) is supported by the record. **See Benner**, **supra**; **see also** PCRA Court Opinion, 5/12/21, at 12. Indeed, we conclude that Victim agreed on cross-examination that she made an inconsistent statement as it relates to her present allegations when she told investigators the assault took place in 2013. **Id.** at 119. Victim explained, during cross-examination, that through the course of that conversation with investigators, she discovered that Wheeler had moved out of her home in 2013 and, therefore, she pinpointed the year of the assault to 2012. **Id.** We find that the prior consistent statements Victim testified to on redirect examination were admissible pursuant to Rule 613(c)(2) and its comment, since Victim explained the inconsistent 2013 statement and the consistent statements admitted on redirect examination supported that explanation and denial of fabrication. **See** Pa.R.E. 613(c)(2). Attorney Lang cannot be found ineffective for failing to raise a meritless objection to admissible evidence.[4] **See Jones**, **supra**.

Moreover, to the extent prior consistent statements were admitted on Victim's direct examination, which preceded Attorney Lang's raising of the inconsistent 2013 statement, we find that Attorney Lang had a reasonable basis for not objecting given his trial strategy, which was evidenced by his opening argument to the jury that requested the jurors rely upon the

---

[4] In this regard, Wheeler's reliance on **Bond**, **supra** is misplaced, since, in **Bond**, this Court found Rule 613(c)(2) was inapplicable because the victim never explained the inconsistencies in her testimony. **See id.** at 670.

inconsistencies in the varying versions of Victim's allegations to deem Victim incredible. *See Bardo*, *supra*. Indeed, although Wheeler now characterizes the statements at issue as impermissibly admitted as "prior consistent statements," Attorney Lang, at trial, requested the jury draw its attention to the *inconsistencies* between the statements now at issue. Additionally, to the extent that all of the admitted prior consistent statements were made after Victim's alleged motive to fabricate,[5] Rule 613(c)(2) applies to those statements regardless. *See Commonwealth v. Harris*, 852 A.2d 1168, 1176 (Pa. 2004) (pursuant to Rule 613(c)(2), prior consistent statements are admissible to rebut charge of having made prior inconsistent statement regardless of whether statement predates motive to fabricate). Given that we have already found Attorney Lang's trial theory was reasonable, and since his pointing out inconsistencies in Victim's versions of events reasonably advanced his theory that Victim fabricated the allegations, *see Bardo*, *supra*, Wheeler's ineffectiveness claim based on the admission of prior consistent statements must fail.[6] *See Chmiel*, *supra*; *Ali*, *supra*.

_____

[5] As we noted previously, Attorney Lang argued to the jury that Victim had multiple motives to fabricate the allegations against Wheeler, which arose at differing times, including Victim's motive to: move back into Father's home, appease Father by appealing to his "hatred" of Wheeler, and avoid facing perjury charges once the police investigation into her allegations commenced.

[6] Even assuming, *arguendo*, that the challenged statements were admitted in error, we would decline to find the necessary prejudice. *See Chmiel*, *supra*. In *Commonwealth v. Busanet*, 54 A.3d 35 (Pa. 2012), our Supreme Court found that where trial counsel meticulously cross-examined the witness with
*(Footnote Continued Next Page)*

Next, Wheeler claims that Attorney Lang was ineffective for affirmatively offering evidence that Wheeler consulted with counsel prior to his arrest regarding the matter, and further argues that Attorney Lang should have objected when the prosecution highlighted his pre-trial silence. Wheeler suggests that Attorney Lang was ineffective for failing to file a motion *in limine* rather than constructing a "straw man" to knock down. **See** Appellant's Brief, at 34. Wheeler relies on our Supreme Court's decisions in **Commonwealth v. Turner**, 454 A.2d 537 (Pa. 1982), and **Commonwealth v. Molina**, 104 A.3d 430 (Pa. 2014), to establish prejudice. Wheeler is entitled to no relief.

At the PCRA hearing, Attorney Lang explained that he was concerned with the jury drawing negative inferences from Wheeler being located in North Carolina at the time of Victim's disclosure and the start of the criminal investigation because jurors might infer Wheeler was avoiding the matter and was not prepared to defend his innocence. To rebut this possible negative

---

evidence of a motive to fabricate, and painstakingly pointed out to the jury that specific motive, and the jury only considered such evidence for purposes of credibility of the witness rather than substance, the PCRA petitioner failed to establish prejudice. **Id.** at 67. Wheeler's case is on all fours with **Busanet** insofar as Attorney Lang vigorously cross-examined Victim regarding her motives to lie, argued in opening and closing arguments that the jury should pay particularly close attention to the varying versions of the allegations which supported a finding that Victim was incredible, and the consistent statements were only relied upon by counsel in closing argument for purposes of establishing credibility. Moreover, if Attorney Lang had challenged the admissibility of Victim's prior consistent statements, he could not have relied on them when highlighting inconsistencies to the jury during his closing argument, which would have been contrary to his theory of the case that Victim is incredible.

- 14 -

inference—what Wheeler refers to as the aforementioned "straw man"—and demonstrate to the jury that Wheeler took the allegations seriously from their inception, Attorney Lang elicited testimony on direct examination of Wheeler that Wheeler sought Attorney Lang's services, via phone call while out-of-state, prior to his arrest. *See* N.T. Jury Trial, 6/20/19, at 201-02. While Wheeler was testifying on direct examination, Wheeler suggested that he was given no opportunity to assert his innocence. *Id.* ("I'm states away. I'm beginning to realize this has been going on for quite some time and I've had no input."). On cross-examination, the Commonwealth relied on the theory of "fair response," *see, e.g.*, *Commonwealth v. Copenhefer*, 719 A.2d 242, 251-52 (Pa. 1988), and inquired into the exact date Wheeler had retained counsel. N.T. Jury Trial, 6/20/19, at 205. The Commonwealth argues that it sought to impeach Wheeler using his version of the "investigative timeline," *see* Appellee's Brief, at 30, as well as Wheeler's claim that he wished to assert his innocence but that police did not fairly investigate his case. *Id.* The Commonwealth's cross-examination of Wheeler proceeded as follows:

> Q. Okay. So, sir, normally I wouldn't comment on this, but since Mr. Lang brought it up on direct [examination,] with regard to your retaining an attorney[—you] are in fact on the stand right now[—y]ou maintain that you didn't [commit the alleged crimes], correct?
>
> A. That's correct.
>
> Q. And that's the first time anybody is hearing this, correct?
>
> A. That's incorrect.
>
> Q. Okay. So[,] you told Detective Stark?

A. **Detective Stark has never bothered to talk to me.**

Q. Okay. And so[,] you, of course, said[, "]I didn't do this thing; I got to tell somebody that I absolutely didn't do it,["] right?

A. I don't believe I've ever said that.

Q. Okay. So[,] you didn't go and assert your innocence, did you?

A. **I wanted to. That was my initial reaction.**

*Id.* at 208 (emphasis added).

The Commonwealth contends that it permissibly used the above questioning to impeach Wheeler's complaint that he had "no input" in the investigation into his case but wished to "confront the[] allegations." *Id.* at 201-02. We agree.

Here, we conclude that the PCRA court's determination that the Commonwealth's cross-examination of Wheeler was conducted in fair response is supported by the record. *See Benner*, *supra*; *see also* PCRA Court Opinion, 5/12/21, at 19. After our independent review, we find that the court properly allowed the Commonwealth's questions in fair response to Wheeler's grievance regarding the thoroughness of the investigation into his case and conclude that the Commonwealth did not rely on the evidence for its substance. *See Commonwealth v. Reed*, 42 A.3d 314, 323-24 (Pa. Super. 2012) (Fifth Amendment does not preclude prosecutor from fairly responding to defense argument by referencing testifying defendant's prior silence). Further, we are satisfied that Attorney Lang had a reasonable basis for eliciting testimony from Wheeler that Wheeler had retained Attorney Lang's services from North Carolina to rebut the aforementioned subtle inference of guilt.

- 16 -

Attorney Lang reasonably elicited that testimony for the purpose of relying upon it in closing argument to demonstrate that Wheeler indeed took the allegations seriously and asserted his innocence from the beginning. *See Bardo*, *supra*; *see also* N.T. Jury Trial, 6/21/19, at 13-14 (closing argument). Because we find Attorney Lang's trial strategy was reasonably based, Wheeler's ineffectiveness claim must fail.[7] *See Chmiel*, *supra*; *Ali*, *supra*. Insofar as Wheeler argues that Attorney Lang should have pursued a motion *in limine* to effectuate this trial strategy, we conclude that we may not review the reasonableness of Attorney Lang's theory in hindsight. *See Hawkins*, *supra*.

Next, Wheeler cites to our Supreme Court's decision in *Commonwealth v. Jones*, 240 A.3d 881 (Pa. 2020), to support his claim that Detective Timothy Perkins testified impermissibly as a lay witness regarding the behavior of child victims of sexual assault. *See* N.T. Jury Trial, 6/20/19, at 136-37. Nevertheless, we find that because Wheeler's claim had no arguable merit at the time of his trial, Attorney Lang had a reasonable basis for not objecting. *See Jones*, 912 A.2d at 278.

In *Jones*, *supra*, our Supreme Court held testimony from a law enforcement officer concerning child victims' typical behaviors and responses

---

[7] Though we need not address the issue of prejudice, *see Ali*, *supra*, we find none resulted since the Commonwealth's questioning was brief and contextual and because it did not rely on the reference to Wheeler's pre- or post-arrest silence as substantive evidence. *See Commonwealth v. Rivera*, 1788 MDA 2019, at *14-*15 (Pa. Super. filed May 24, 2021); *see also Reed*, *supra*.

- 17 -

to sexual abuse falls within the realm of expert testimony and testimony on such topic is admissible subject to proper expert qualification. 240 A.3d at 891. Wheeler claims that his case is on all fours with *Jones*.

Although the cases are factually similar, appellate courts of this Commonwealth review ineffective assistance of counsel claims under the PCRA according to the standards and legal precedents in effect at the time of counsel's representation. *See Commonwealth v. Smith*, 995 A.2d 1143, 1172 (Pa. 2010) (assessing reasonableness of trial attorney's stewardship under prevailing professional norms at time of representation). Additionally, the Supreme Court has clarified that counsel will not be faulted for failing to predict a change in the law. *See Commonwealth v. Bennett*, 57 A.3d 1185, 1201 (Pa. 2012).

Here, Attorney Lang's opening argument referred to Victim's case as atypical and called on the jury to infer that Victim's allegations are incredible based on that atypicality. N.T. Jury Trial, 6/19/19, at 14-15 (opening argument). Prior to seeking its admission, the Commonwealth informed the court and Wheeler that it intended to introduce Detective Perkins' lay witness testimony regarding "typical sex assault cases[,]" which would be based on the detective's experience and training, and which was intended to rebut Attorney Lang's opening statement and theory of atypicality. *See* N.T. Jury Trial, 6/19/19, at 129. The court agreed to permit Detective Perkins' brief lay testimony on that topic. *Id.* ("[I]n light of [Attorney] Lang's opening argument[, the court wi]ll allow some leeway. Don't go too far."). As

previously noted, the Commonwealth later introduced Detective Perkins' now-challenged testimony. *Id.*, 6/20/19, at 136-37.

After our independent review, we find that the PCRA court's determination that *Jones*, 240 A.3d at 891, is inapplicable to Wheeler's case is supported by the record. *See Benner*, *supra*; *see also* PCRA Court Opinion, 5/12/21, at 17. We conclude that, here, Attorney Lang cannot be faulted for failing to object to Detective Perkins' lay testimony since such objection would have been premised on *Jones*, 240 A.3d at 891, and thus, would have required Attorney Lang to predict a future change in the law. *See Bennett*, *supra*. Moreover, in light of Attorney Lang's opening statement, the Commonwealth's subsequent notice to the court and Wheeler of its intent to admit Detective Perkins' lay testimony, and the court's indication that it would grant minimal leeway for such admission, we are satisfied that Attorney Lang had no reasonable basis for objecting at that time since the objection would have been meritless and there was no alternative that offered a potential for success substantially greater than the course Attorney Lang actually pursued. *See Jones*, 912 A.2d at 278; *Spotz*, *supra*.

Next, Wheeler contends that Attorney Lang was ineffective for failing to object to the prosecution's: (1) closing argument, which included the prosecutor mentioning "notorious offenders" including Nassar, Cosby, and

Sandusky;[8] (2) "attacks" on Attorney Lang, which distracted the jury;[9] and (3) call for jurors to convict Wheeler to permit Victim to begin to "heal."[10]

Our "stringent" standard of review for a claim of prosecutorial misconduct stemming from improper argument to the jury is well-settled: "Comments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict." **Chmiel**, **supra** at 1147.

Further, this Court has previously delineated the appellant's heavy burden for proving an ineffective assistance of trial counsel claim based on counsel's failure to object to the prosecution's remarks to the jury:

---

[8] The prosecutor stated to the jury: "There is no typical sexual assault investigation. In today's day and age, in the day and age of Larry Nassar, of Bill Cosby, of Jerry Sandusky, I can't imagine why a child would delay the report. I can't explain that to you. But it happens. And that's what happened here." N.T. Jury Trial, 6/21/19, at 28 (closing argument).

[9] The prosecutor argued to the jury:

> [Attorney Lang i]s asking you to focus on literally anything that is not [from the Victim], that is not the words that came out of her mouth on that stand. He's asking you to do that because he wants to distract you from [Victim]. He wants to distract you from how [Victim] courageously told a room full of strangers about how this grown man violated her, how he penetrated her, how he exposed himself.

N.T. Jury Trial, 6/21/19, at 31 (closing argument).

[10] The prosecution asked the jury to "close the door on that trauma so [Victim] can start to heal[.]" N.T. Jury Trial, 6/21/19, at 43 (closing argument).

the remarks must first be genuinely prejudicial to the defendant; this prejudice must be serious enough that it could not be cured by the court's instructions; counsel must have had no reason for failing to object to the remarks; and finally, it must appear that objecting would have done some good—that is, counsel's failure to object denied the defendant a fair trial.

*Commonwealth v. Thompson*, 660 A.2d 68, 75 (Pa. Super. 1995) (citing

*Commonwealth v. Baker*, 614 A.2d 663, 673 (Pa. 1992)).

In *Chmiel*, *supra*, our Supreme Court explained how appellate courts

review allegations of prosecutorial misconduct in argument to the jury:

In accord with the long-standing principle that a "prosecutor must be free to present his or her arguments with logical force and vigor," this Court has permitted prosecutorial advocacy "as long as there is a reasonable basis in the record for the prosecutor's comments." *Commonwealth v. Robinson*, [] 864 A.2d 460, 516-17 (Pa. 2004). Prosecutorial comments based on the evidence or reasonable inferences therefrom are not objectionable, nor are comments that merely constitute oratorical flair. [*Commonwealth v.*] *Tedford*, 960 A.2d [1,] 33 [(Pa. 2008)]. Furthermore, the prosecution must be permitted to respond to defense counsel's arguments. *Id.* Any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. *Robinson*, *supra* at 517.

It is improper for a prosecutor to offer his or her personal opinion as to the guilt of the accused or the credibility of any testimony. *Commonwealth v. DeJesus*, [] 860 A.2d 102, 112 ([Pa.] 2004). However, it is well within the bounds of proper advocacy for the prosecutor to summarize the facts of the case and then ask the jury to find the accused guilty based on those facts. *See id.*

*Chmiel*, *supra* at 1146-47 (brackets omitted). Additionally, the prosecutor's

insinuation during closing argument that defense counsel is attempting to

divert a jury's attention from the totality of the evidence is not improper where

the remark "constitutes an appeal to the jury to use its collective intelligence

and logic in assessing all of the evidence." ***Commonwealth v. Hennigan***, 753 A.2d 245, 261-62 (Pa. Super. 2000) (quoting ***Commonwealth v. Smith***, 467 A.2d 1307, 1321 n.20 (Pa. Super. 1983)).

Here, we conclude that Wheeler's complaints of ineffectiveness are overstated, and that he is entitled to no relief on any of his prosecutorial misconduct claims since the PCRA court's determination that no relief is due is supported by the record. ***See Benner***, ***supra***; ***see also*** PCRA Court Opinion, 5/12/21, at 23-24. First, as it relates to all three challenged remarks, we are satisfied that the court instructed the jury twice over the course of the trial that the attorneys' arguments are not evidence and ought not be considered as such. The jury is presumed to follow the court's instructions. ***See Chmiel***, ***supra*** at 1147.

As to the prosecution's references to Nassar, Cosby, and Sandusky, we have already mentioned that Attorney Lang's theory of the case included that Victim was incredible based on the fact that her allegations were atypical of other child sex assault cases. Given Attorney Lang's opening argument to the jury, we conclude that the prosecution was permitted to respond by asserting that, in essence, there is no such "typical" child sex assault case. We find that the Commonwealth's closing remarks were reasonably based in the record where they challenged Attorney Lang's comment on the typicality of Victim's case. ***See Robinson***, ***supra*** at 516-17. Additionally, the prosecutor merely said the names of the "notorious" offenders in passing, and we conclude it was

- 22 -

fair response to Attorney Lang's charge of "atypicality," **see Tedford**, **supra**, making use of permissible oratorical flair. **Id**.

As to the prosecution's "attacks" on Attorney Lang, **see supra** at n.9, we find that this case is on all fours with **Hennigan**, where the prosecutor's remarks constituted an appeal to the jury to use its collective intelligence and logic in assessing all of the evidence for and against Wheeler. **See Hennigan**, **supra**.

Finally, as to the prosecution's closing argument asking the jury to "close the door on that trauma so [Victim] can start to heal," **see** N.T. Jury Trial, 6/21/19, at 43 (closing argument), we find that the Commonwealth was merely summarizing the facts of the case and asking the jury to find Wheeler guilty based on those facts, again making use of permissible oratorical flair. **See DeJesus**, **supra**; **see also Tedford**, **supra**. **See also Commonwealth v. Carson**, 913 A.2d 220, 238 (Pa. 2006) ("If [prosecutor's] arguments [based on the evidence] were improper, the Commonwealth would be hard-pressed to make any argument in response to the defense."). Our Supreme Court has previously declined to find prosecutorial misconduct under similar circumstances. **See Commonwealth v. Marshall**, 633 A.2d 1100, 1107 (Pa. 1993) (prosecutor's statement to jury in closing to "do your duty and close the eyes of the dead" within bounds of permissible oratorical flair and not deliberate attempt to destroy factfinder's objectivity). Since any objections to Wheeler's now-challenged closing remarks would have been meritless, we

cannot find Attorney Lang was ineffective for failing to raise those objections. *Jones*, 912 A.2d at 278.

Last, Wheeler asserts that the cumulative prejudice that he suffered from all of the above-alleged errors entitles him to a new trial. *See* Appellant's Brief, at 44-47. We disagree.

Our Supreme Court has previously explained the method by which appellate courts review a claim of cumulative error:

> [N]o number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually. *Commonwealth v. Johnson*, [] 966 A.2d 523, 532 ([Pa.] 2009). Thus, to the extent claims are rejected for lack of arguable merit, there is no basis for an accumulation claim. *Commonwealth v. Sattazahn*, [] 952 A.2d 640, 671 ([Pa.] 2008). When the failure of individual claims is grounded in lack of prejudice, however, then the cumulative prejudice from those individual claims may properly be assessed. *Johnson*, [*supra*] (citing *Commonwealth v. Perry*, [] 644 A.2d 705, 709 ([Pa.] 1994)[).]

*Commonwealth v. Hanible*, 30 A.3d 426, 483 (Pa. 2011).

Here, we conclude that the PCRA court's determination that Wheeler is not entitled to a cumulative error claim is supported by the record. *See Benner*, *supra*; *see also* PCRA Court Opinion, 5/12/21, at 24-25. None of the analyses herein denying Wheeler relief is grounded in a lack of prejudice. *See Johnson*, *supra*. Indeed, we have declined to grant Wheeler relief on each of his errors raised on appeal because Attorney Lang's action was either reasonably based or there was a lack of arguable merit to Wheeler's claim. Therefore, Wheeler has no basis for an accumulation claim. *See Sattazahn*, *supra*.

- 24 -

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/4/2021